Earl J. Teschendorf and Linda Teschendorf,
Plaintiffs,

v.

State Farm Insurance Companies, Reliance
National Indemnity Co., and American Family
Mutual Insurance Co., Defendants.

Bernard J. Shira and Maria Shira,
Plaintiffs-Appellants,

v.

Reliance National Indemnity Co., Defendant,

American Family Insurance Co.,
Defendant-Respondent.†

Court of Appeals

*No. 03–3521. Submitted on briefs September 7, 2004.—Decided
December 7, 2004.*

2005 WI App 10

(Also reported in 691 N.W.2d 882.)

† Petition to review granted 3-8-2005.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Eric S. Darling* of *Schmidt, Darling & Erwin* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terry J. Booth* of *Piper & Schmidt* of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. Bernard J. Shira and Maria Shira appeal from an order for summary judgment dismissing their claim against American Family Mutual Insurance Company. The dismissal was based on the trial court's conclusion that American Family's reducing clause, which is based on WIS. STAT. § 632.32(5)(i)2. (2001–02),[1] unambiguously allows the reduction of uninsured motorist policy limits by worker's compensation funds that were paid to the State Work Injury Supplemental Benefit Fund ("the State") because the insured had no dependents as that term is defined by worker's compensation statutes. We conclude that the unambiguous language of both the statute and the insurance policy allows a reduction only for those payments paid or payable to the insured or the insured's heirs or estate. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2. Scott Shira, age thirty-three, died in an automobile accident in Woodbury, Minnesota, while in the course of his employment for Layne Christensen Company.[2] The accident was allegedly caused by an uninsured motorist. Scott's parents, the Shiras, filed a

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Scott's passenger, Earl Teschendorf, was injured in the accident. His claims are not at issue in this appeal.

wrongful death action under WIS. STAT. § 895.04.[3] They sought to collect uninsured motorist ("UM") benefits included in two American Family Insurance Company automobile policies purchased by Scott prior to his death.

¶ 3. At the time of his death, Scott was unmarried and had no children. Because Scott had no dependents as defined by the worker's compensation statutes, the majority of the worker's compensation benefits payable as a result of his death, $159,900, were required to be paid directly to the State of Wisconsin, specifically to the Work Injury Supplemental Benefit Fund.[4] *See* WIS. STAT. § 102.49(5)(b).[5] The provisions of § 102.49 essentially require worker's compensation insurance to pay the State the benefits it would otherwise "save" when a worker dies and, therefore, cannot personally receive

---

[3] On appeal, no party disputes that the Shiras are proper parties to bring a wrongful death action based on Scott's death. Also, at the trial court, the parties debated whether Wisconsin or Minnesota law would apply to this wrongful death action. We have not been asked to consider this issue and therefore do not address it.

[4] It is undisputed that Scott's parents were paid $12,500 and medical providers were paid $1048. American Family's attorney explained at the motion hearing that the $12,500 payment was for funeral and other expenses. Our analysis is not affected by this $12,500 payment to the Shiras.

[5] WISCONSIN STAT. § 102.49(5) provides in relevant part:

(a) In each case of injury resulting in death, the employer or insurer shall pay into the state treasury the sum of $5,000.

(b) In addition to the payment required under par. (a), *in each case of injury resulting in death leaving no person dependent for support, the employer or insurer shall pay into the state treasury the amount of the death benefit otherwise payable* . . . .

(Emphasis supplied.)

357

the benefits. If a partially dependent person survives the decedent, the payments to the State are reduced by the amount paid to that dependent.

¶ 4. American Family successfully argued to the trial court that the Shiras are not entitled to receive anything under Scott's UM policies because the net limits of those policies, totaling $150,000, must be reduced by the amount of worker's compensation paid to the State by the worker's compensation carrier or the employer, which in this case exceeded $150,000. This appeal followed.

## STANDARD OF REVIEW

■

¶ 5. We review the trial court's grant of summary judgment *de novo,* using the same methodology as the trial court. *Mullen v. Walczak,* 2003 WI 75, ¶ 11, 262 Wis. 2d 708, 664 N.W.2d 76. Summary judgment is appropriate if the pleadings and other information on file show there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; *see also* WIS. STAT. § 802.08(2). Here, the facts are undisputed, leaving only issues of law for our consideration. Specifically, this case involves the interpretation of American Family's insurance policy and WIS. STAT. § 632.32(5)(i)2. issues that we review *de novo. See Mullen,* 262 Wis. 2d 708, ¶ 12 (interpretation of an insurance policy); *Gonzalez v. Teskey,* 160 Wis. 2d 1, 7–8, 465 N.W.2d 525 (Ct. App. 1990) (interpretation of statutes).

## DISCUSSION

■

¶ 6. At issue is the application of a clause in American Family's insurance policy, generally known as a reducing clause, which states:

The limits of liability of this coverage will be reduced by:

. . . .

3. A payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law or any similar law.

(Emphasis added.) This clause is specifically authorized by Wis. Stat. § 632.32(5)(i)2., which provides:

(i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:

. . . .

2. Amounts paid or payable under any worker's compensation law.

¶ 7. The Shiras do not dispute that the policy as written conforms with Wis. Stat. § 632.32(5)(i)2. However, they contend that interpreting the clause to reduce American Family's UM coverage limits by amounts paid to the State rather than to Scott or his heirs or estate is contrary both to the insured's common sense interpretation of the reducing clause and to public policy.

¶ 8. In response, American Family contends that because the clause does not explicitly limit its applica-

tion to funds paid or payable *to the insured,* payments made to the State are also subject to the reducing clause. American Family also points out that reducing clauses that conform with WIS. STAT. § 632.32(5)(i)2. have been held unambiguous and enforceable, citing *Badger Mutual Insurance Co. v. Schmitz,* 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223; *Taylor v. Greatway Insurance Co.,* 2001 WI 93, 245 Wis. 2d 134, 628 N.W.2d 916; *Bellile v. American Family Mutual Insurance Co.,* 2004 WI App 72, 272 Wis. 2d 324, 679 N.W.2d 827; and *Va n Erden v. Sobczak,* 2004 WI App 40, 271 Wis. 2d 163, 677 N.W.2d 718.

¶ 9. We agree with American Family that both the Wisconsin Supreme Court and the Wisconsin Court of Appeals have concluded that reducing clauses that are consistent with WIS. STAT. § 632.32(5)(i)2. are unambiguous and enforceable. However, no prior cases (including the cases relied upon by American Family) have addressed the issue presented here: whether worker's compensation benefits paid to the State, rather than to the insured or the insured's heirs or estate, fall within § 632.32(5)(i)2. All of the cases cited by American Family involve payments to the insured or the insured's dependents. We conclude that § 632.32(5)(i)2. does not permit reduction of coverage by payments made by other persons or entities to the State and, interpreting the reducing clause consistent with the statute, neither does the reducing clause in American Family's policy.

¶ 10. Prior to 1995, courts in Wisconsin held unenforceable a variety of insurance policies containing reducing clauses. *See Schmitz,* 255 Wis. 2d 61, ¶¶ 25–30. In *Schmitz,* the court explained that the response of the Wisconsin legislature was to enact WIS. STAT. § 632.32(5)(i), which "expressly permitt[ed] reducing clauses that decrease UM or [underinsured motorist

("UIM")] payments by the amounts recovered from other sources." *Schmitz*, 255 Wis. 2d 61, ¶ 31.

¶ 11. Since Wis. Stat. § 632.32(5)(i) was enacted, insurance policy clauses consistent with it have been upheld as enforceable in numerous cases, involving both UM and UIM coverage. In both *Schmitz* and *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557, the supreme court interpreted Wis. Stat. § 632.32(5)(i) as referring to payments made *to the insured.* In *Dowhower*, the court concluded that a reducing clause containing language authorized by § 632.32(5)(i)1. "is neither ambiguous nor contrary to public policy." *Dowhower*, 236 Wis. 2d 113, ¶ 20. *Dowhower*, considering a UIM clause, concluded:

> [A]n insurer may reduce payments made pursuant to a UIM policy <u>by amounts received</u> from other legally responsible persons or organizations, provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery <u>that will be arrived at by combining payments made from all sources</u>.

*Id.*, ¶ 33 (emphasis added).

¶ 12. In *Schmitz*, the court elaborated on its holding in *Dowhower*:

> Implicit in our determination that reducing clauses would be valid only if they "provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources" was a recognition that the reasonable insured might not understand, intuitively, the scope of his or her UIM coverage. We signaled in *Dowhower* that UIM insurers that reduce UIM payments by amounts paid from other sources, are required to make clear to purchasers of UIM coverage that they are purchasing coverage that will put them in the same position they would be in if the

underinsured tortfeasor had liability limits equal to the amount of UIM coverage the insured purchased. Insureds will then understand that if they want to be assured of having, say, $200,000 in total available coverage, they will have to purchase UIM coverage with a $200,000 limit.

*Schmitz*, 255 Wis. 2d 61, ¶ 38.

¶ 13. Both *Dowhower* and *Schmitz* are based on the court's understanding that WIS. STAT. § 632.32(5)(i) refers to payments made *to the insured*. It was based on this understanding that the court upheld the validity of the statute and reducing clauses consistent with the statute. Although § 632.32(5)(i)2. does not explicitly state that the payments must be paid or payable *to the insured* under any worker's compensation law, these words are implied from the context of the overall statutory scheme in which they occur. We conclude that § 632.32(5)(i)2. unambiguously includes only those payments paid or payable to the insured or the insured's heirs or estate.

¶ 14. Finally, we briefly address American Family's argument that we should interpret the reducing clause consistent with Wisconsin's policy of limiting the right of non-dependents to recover worker's compensation death benefits. Nothing in our decision today alters worker's compensation law or the policy behind it. The Shiras cannot recover the worker's compensation benefits, and do not seek to do so. At issue here is only the insured's right to receive the benefits bargained for and paid for in an insurance contract, either for the benefit of himself or his heirs or estate.

¶ 15. Like the hypothetical insured discussed in *Schmitz*, Scott purchased coverage that would put him in the same position he would be in if the uninsured tortfeasor had liability limits equal to the amount of

362

UM or UIM coverage purchased. *See* 255 Wis. 2d 61, ¶ 38. By purchasing $150,000 in UM coverage, Scott guaranteed that he, or his heirs or estate, would recover a total of $150,000, through payments by the tortfeasor, worker's compensation, disability payments and UM payments. *See* WIS. STAT. § 632.32(5)(i). To deny recovery in this case would deny Scott the benefit of the coverage he purchased and would provide a windfall for American Family. This would be contrary to both § 632.32(5)(i) and the expectations of the insured. *See Danner v. Auto-Owners Ins.*, 2001 WI 90, ¶ 57, 245 Wis. 2d 49, 629 N.W.2d 159 ("We interpret insurance contracts to meet the reasonable expectation of the insured.").

## CONCLUSION

¶ 16. For the foregoing reasons, we reverse the summary judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

¶ 17. FINE, J. (*dissenting*). I respectfully dissent.

¶ 18. First, this action seeks to recover on an automobile policy issued to and paid for by Scott W. Shira, the adult son of the plaintiffs, Bernard J. and Maria Shira. Scott Shira's parents are not insureds under his insurance policy. According to the Majority, their entitlement to the uninsured-motorist funds generated by the policy stems from their having "filed a wrongful death action under WIS. STAT. § 895.04." Majority, ¶ 2 (footnote omitted). I do not, however, understand how this can be because the accident happened in Minnesota and WIS. STAT. § 895.03 only permits wrongful-death actions to be brought "for a death

363

caused in this state." Although the actual death need not occur in Wisconsin, there must be some Wisconsin "act or omission" that "was a substantial factor in causing" the death for § 895.03 to apply. *Tillett v. J.I. Case Co.*, 756 F.2d 591, 595 (7th Cir. 1985), *disapproved of on other grounds, Boyle v. United Techs. Corp.*, 487 U.S. 500, 510 (1988). Although I recognize that concepts of "standing" in Wisconsin are somewhat fluid, *see Wisconsin Bankers Ass'n v. Mutual Sav. & Loan*, 96 Wis. 2d 438, 444–445 n.1, 291 N.W.2d 869, 873 n.1 (1980) (objections to standing may be waived), the wrongful-death remedy is "a matter of legislative grace," *Stolper v. Owens-Corning Fiberglas Corp.*, 178 Wis. 2d 747, 752, 505 N.W.2d 157, 159 (Ct. App. 1993). I do not understand, and neither the parties nor the Majority explains, why this case is here.

¶ 19. Second, as the Majority recognizes, neither Scott Shira's insurance policy nor the operative statutes are ambiguous. Scott Shira's insurance policy reduces the insurance company's liability under its coverage for uninsured-motorist coverage by "[a] payment made . . . because of bodily injury under any workers' compensation or disability benefits law." (Bolding omitted.) This clause is permitted by WIS. STAT. § 632.32(5)(i)2, quoted by the Majority in ¶ 6.

¶ 20. Here, there was a "payment" encompassed by the uninsured-motorist coverage clause in Scott Shira's policy. That the payment was made to the state fund rather than to either Scott Shira's estate or to his parents is immaterial. Indeed, the trial court's decision, which the Majority reverses, is consistent with Wisconsin's worker's compensation law, which, as the Majority recognizes, does not permit payment of worker's compensation benefits to the parents of adult children, unless those parents relied on the adult child

for their support. *See* Wis. Stat. §§ 102.46–102.49, 102.51. There is no evidence in the summary-judgment record that Mr. and Mrs. Shira received *any* support from Scott Shira or anticipated doing so.

¶ 21. In my view, the Majority's quotations from fleeting short-hand references in some cases to an "insured" cannot override the unambiguous statutory language, especially when the issue for which the Majority cites those fleeting short-hand references was neither raised nor decided—or even considered—in those decisions. Accordingly, those fleeting short-hand references were hardly "judicial acts" reflecting the discussion and decision of "a question germane to, though not necessarily decisive of, the controversy" then before the courts issuing those decisions. *See Chase v. American Cartage Co.*, 176 Wis. 235, 238, 186 N.W. 598, 599 (1922) (discussing exceptions from traditional notions of *dictum*); *see also State v. Leitner*, 2002 WI 77, ¶ 22 n.16, 253 Wis. 2d 449, 464 n.16, 646 N.W.2d 341, 348 n.16 (discussing exceptions from traditional notions of *dictum*).

¶ 22. Based on the foregoing, I would affirm.